UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| IXCHEL PHARMA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>BIOGEN INC.,<br><br>    Defendant. | CIV. NO.: 2:17-00715 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff Ixchel Pharma, LLC brought this action against defendant Biogen Inc. asserting federal and state antitrust and state tort claims arising from an agreement that plaintiff entered into with non-party Forward Pharma FA ApS regarding the development of a pharmaceutical drug and a settlement agreement defendant entered into with Forward. Before the court is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 20.)

I. Factual and Procedural History

Plaintiff is a biotechnology company allegedly working

1

to develop a drug to treat the neurological disorder Friedreich's ataxia, using the active pharmaceutical ingredient dimethyl fumarate ("DMF"). (First Am. Compl. ("FAC") ¶¶ 8, 10 (Docket No. 17).) Plaintiff lacks the resources to develop this drug without a partner. (FAC ¶ 20.)

In January 2016, plaintiff and Forward, a biotech company, entered into a Collaboration Agreement ("Ixchel-Forward Agreement") to develop a DMF drug for the treatment of Friedreich's ataxia. (FAC ¶¶ 13, 22; Tsai Decl., Ex. E ("Ixchel-Forward Agreement") (Docket No. 22-1)[1].) Pursuant to this agreement, Forward first would investigate the feasibility of conducting clinical trials for the drug and then, if clinical trials were feasible, conduct and pay for clinical trials. (FAC ¶ 23; Ixchel-Forward Agreement § 4.1.) Following clinical trials, Forward would have the sole discretion to seek FDA approval. (Ixchel-Forward Agreement § 4.3.) Upon FDA approval, Forward would manage and pay for the manufacturing and commercialization of the DMF drug with plaintiff's assistance, and plaintiff would be entitled to royalties from the sale of the new drug. (FAC ¶ 24.) In October 2016, Forward confirmed the feasibility of conducting clinical trials for the DMF drug, and plaintiff and Forward began working to set up clinical trials for the new DMF drug. (FAC ¶ 25.)

Defendant currently markets the drug Tecfidera, which also

---

[1] The court takes judicial notice of the Ixchel-Forward Agreement because the First Amended Complaint repeatedly references it. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

has DMF as the active pharmaceutical ingredient, to treat the neurological disorder multiple sclerosis. (FAC ¶ 14.) Tecfidera allegedly is the only FDA-approved drug containing DMF for the treatment of neurological disorders in the United States. (FAC ¶ 17.)

In January 2017, defendant and Forward entered into a settlement of a dispute between them in which Forward agreed, among other things, to terminate all existing, and not enter any new, contracts with plaintiff regarding the development of DMF drugs.[2] (FAC ¶¶ 29, 31-32; Tsai Decl., Ex A ("Biogen-Forward Agreement") (Docket No. 26-3)[3].)

Pursuant to the Biogen-Forward Agreement, Forward subsequently terminated the Ixchel-Forward agreement and ceased working with plaintiff on clinical trials for the new DMF drug. (FAC ¶ 34.) Since the termination of the Ixchel-Forward Agreement, plaintiff has been unable to find a new partner to develop the DMF drug. (FAC ¶ 35.)

Based on the termination of Forward's agreement with plaintiff, plaintiff initiated this action against defendant, alleging: (1) violation of the Sherman Act; (2) tortious interference with contract; (3) intentional and negligent interference with prospective economic advantage; (4) violation

---

[2] Plaintiff alleges that Biogen viewed the new DMF drug as a competitive threat to its sales of Tecfidera and control over the market for DMF drugs for treating neurological diseases. (FAC ¶ 28.)

[3] The court takes judicial notice of the Biogen-Forward Agreement because it is a document "referred to in the complaint." Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006).

3

of the California Cartwright Act; and (5) violation of California's Unfair Competition Law ("UCL"). Ixchel filed a First Amended Complaint on June 14, 2017. (Docket No. 17.)

Discussion

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A.  Sherman Act and Cartwright Act

Plaintiff's first cause of action is for violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and its fifth cause of action is for violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16700, et seq. These causes of action allege that Biogen and Forward entered into unlawful agreements to restrict the development of any drugs containing DMF as an active pharmaceutical ingredient for the treatment of neurological diseases. (FAC ¶¶ 41-42.) To bring a Sherman Act or Cartwright

4

Act claim, a plaintiff must establish antitrust standing.[4]  See
Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
of Carpenters, 459 U.S. 519, 535 n.31 (1983); Dang v. S.F. Forty
Niners, 964 F. Supp. 2d 1097, 1110 (N.D. Cal. 2013).  In
determining whether a plaintiff has antitrust standing, the court
evaluates five factors.  Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of
Cal., 190 F.3d 1051, 1054-55 (9th Cir. 1999) (citing Amarel v.
Connell, 102 F.3d 1494, 1507 (9th Cir. 1997)).  One of these
factors, antitrust injury, "is necessary . . . to establish
standing."  Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S.
104, 110 n.5 (1986); see Am. Ad Mgmt., 190 F.3d at 1055.

To establish antitrust injury, a plaintiff must be "a
participant in the same market as the alleged malefactors."  Bhan
v. NME Hospitals, Inc., 772 F.2d 1467, 1470 n.3 (9th Cir. 1985).
In analyzing whether parties participate in the same market, "the
focus is upon the reasonable interchangeability of use or the
cross-elasticity of demand between the services provided by" each
party.  Id. at 1470-71.

Even assuming that the relevant market is defined as

---

[4]  Antitrust standing is distinct from Article III standing.  Plaintiff also does not appear to have Article III standing because it has not allegedly suffered an actual or imminent injury in fact, and this alone would be enough to dismiss the First Amended Complaint.  See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (injury in fact must be "actual or imminent, not conjectural or hypothetical"); cf. Brotech Corp. v. White Eagle Int'l Techs. Grp., Inc., No. Civ.A.03-232, 2004 WL 1427136, at *6 (E.D. Pa. June 21, 2004) (antitrust injury too speculative where there were insufficient allegations regarding how far plaintiff has gone in seeking "FDA approval, when such approval may be anticipated, or whether it will be prepared to enter to product market" upon FDA approval).

"drugs containing DMF as an [active pharmaceutical ingredient] for the treatment of neurological diseases in the United States," (FAC ¶ 37), plaintiff fails to sufficiently allege that it is either a current or potential competitor. First, plaintiff is not a current competitor because it concedes that "Biogen is currently the only company in the world selling any drug in that market." (Id.)

Second, plaintiff is not a potential competitor because it granted Forward the exclusive right to obtain FDA approval for, market, produce, and sell the DMF drug. (See FAC ¶¶ 23-24; Ixchel-Forward Agreement §§ 4.1, 4.3.) Plaintiff concedes that plaintiff does not seek to enter the market for DMF drugs for the treatment of neurological diseases because it is not the party who will seek FDA approval. (See FAC ¶¶ 23-24); cf. 21 U.S.C. § 355(a) (requiring companies obtain FDA approval before marketing pharmaceutical drugs). In a factually similar case, the Third Circuit held that a plaintiff and defendant were not competitors in a particular drug market where the plaintiff gave a drug's manufacturing and development rights to a third party and the third party bore the risk and expense of seeking FDA approval. See Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 235-37 (3d Cir. 2013). Ixchel cannot pass on to Forward the expense and risk of competing in the U.S. DMF drug market while simultaneously seeking to avail itself of the U.S.'s antitrust laws when that arrangement fails. See id. at 236. Because plaintiff is neither a current nor potential competitor in the alleged market, plaintiff does not have antitrust injury.

Plaintiff also argues that even if it is not a

competitor, it suffered antitrust injury because "the injury [plaintiff] suffered was inextricably intertwined with the injury the conspirators sought to inflict" and the harm "was a necessary step in effecting the ends of the alleged illegal conspiracy." Blue Shield of Va. v. McCready, 457 U.S. 465, 479, 484 (1982). This narrow inextricably intertwined doctrine applies where denying standing to the plaintiff is likely to leave a significant antitrust violation undetected or unremedied. See Ostrofe v. H.S. Crocker Co., Inc., 740 F.2d 739, 747 (9th Cir. 1984). Plaintiff provides no precedent that extends this doctrine to this scenario. To the contrary, Ethypharm, 707 F.3d at 237, explicitly rejected this doctrine in a similar scenario because the Ethypharm plaintiff had willfully chosen not to enter the U.S. market for a specific drug and this exception is largely limited to instances where plaintiff and defendant are in the business of selling goods in the same relevant market. As discussed above, plaintiff is not in the business of selling DMF drugs, and has agreed that Forward would manufacture and commercialize the alleged drug. (FAC ¶¶ 23-24.) Thus, the inextricably intertwined doctrine is not applicable.

Because plaintiff has not alleged that it is a current or potential competitor in the relevant market, plaintiff has not suffered antitrust injury and does not have antitrust standing. Accordingly, the court will dismiss plaintiff's first and fifth causes of action.

B. Tortious Interference with Contract

Plaintiff's second cause of action alleges defendant intentionally and tortiously interfered with plaintiff's

7

agreement with Forward by causing Forward to breach the Ixchel-Forward Agreement. (FAC ¶¶ 50-52.) A claim for tortious interference with a contract requires the plaintiff allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship and (5) resulting damage." Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 55 (1998).

As plaintiff correctly points out, tortious interference with a contract does not generally require independent wrongfulness. See id. However, interference with an at-will contract has been viewed as functionally equivalent to interference with a prospective economic advantage, which does require a pleading of wrongful means. See Reeves 33 Cal. 4th at 1152 (finding "economic relationship between parties to contracts that are terminable at will is distinguishable from the relationship between parties to other legally binding contracts"). Thus, to prove tortious interference with an at-will contract, such as the type alleged in this case, a plaintiff must also allege "that the defendant engaged in an independently wrongful act." Id. The interference must be independently wrongful beyond its interfering character, meaning "it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 944 (2008) (citations omitted). "An act is not independently wrongful merely because defendant acted with an improper motive." Korea Supply Co. v. Lockheed

Martin Corp., 29 Cal. 4th 1134, 1158 (2003).

Plaintiff argues there is no independently wrongful act requirement in this case because plaintiff takes the position that the requirement is limited to the employment context. In Popescu v. Apple Inc., 1 Cal. App. 5th 39, 62 (Ct. App. 2016), the court declined to extend Reeves to the facts of that case, but did not hold more generally that Reeves could never apply outside the employment context. [5]

In Freeman Expositions, Inc. v. Global Experience Specialists, Inc., Case No. 2:17-cv-00364-CJC-JDEx, 2017 WL 1488269,*8 (C.D. Cal. Apr. 24, 2017), the court held that the plaintiff did not need to "allege an independently wrongful act to sufficiently plead intentional interference with contractual relations" because the interference at issue was not analogous to that in Reeves. However, the great weight of authority is contrary to Freeman and supports the defendant's position that Reeves does apply outside of the employment context. See, e.g., Hip Hop Beverage Corp. v. Monster Energy Co., Case No. 2:16-cv-01421-SVW-FFM, 2016 WL 7479402, at *4 n.7 (C.D. Cal. July 7, 2016) (applying Reeves to a commissary broker contract); Maritz Inc. v. Carlson Mktg. Grp., Inc., Case No. C. 07-05585 JSW, 2009

---

[5] Plaintiff also points to First Financial Security, Inc., v. Freedom Equity Group, LLC, Case No. 15-cv-01893-HRL, 2017 WL 3593369 (N.D. Cal. Aug. 21, 2017) as evidence that Reeves is limited to at-will employment contracts. However, the First Financial court declined to state whether the application of Reeves is necessarily limited to such a narrow set of facts and chose to leave the question open, commenting that the Reeves court did not express an opinion, and it remains unclear, whether "a plaintiff must prove an independently wrongful act" for an interference that differed from the type in Reeves. Id. at 7.

9

WL 3561521, at *4 (N.D. Cal. Oct. 30, 2009) (explaining that "one cannot maintain a claim for intentional interference with an at-will contract, even in the non-employment context"); Lenhoff Enters. V. United Talent Agency, Inc., Case No. CV 15-01086-BRO-FFMX, 2015 WL 7008185, at *5 (C.D. Cal. Sept. 18, 2015) (applying Reeves to a contract between agency and clients). Accordingly, the court holds that Reeves applies to at-will contracts in the non-employment context.

Here, the Ixchel-Forward Agreement was an at-will contract because Forward could terminate it at any time. (See Ixchel-Forward Agreement § 12.4.) However, plaintiff fails to allege any independently wrongful act by defendant and defendant should not be held liable for seeking to enforce its own intellectual property rights and settling a dispute with Forward. Plaintiff suggests that defendant's independently wrongful act was inducing Forward to not pay for the clinical trials after Forward terminated the agreement. But plaintiff does not point to, and the court is unaware of, any such provision in the Ixchel-Forward Agreement. Because the provision does not appear to exist, defendant cannot be liable for inducing Forward to breach this provision. As discussed above and below, plaintiff's Sherman Act, Cartwright Act, and UCL claims will be dismissed, so these also are not sufficient bases for independently wrongful conduct.

Because the Ixchel-Forward Agreement is an at-will contract and plaintiff does not allege defendant engaged in independently wrongful conduct, plaintiff fails to state a claim for tortious interference with a contract. Accordingly, the

court will dismiss plaintiff's second cause of action.

    C.   <u>Intentional Interference with Prospective Economic Advantage</u>

Plaintiff's third and fourth causes of action allege that defendant intentionally and negligently interfered with plaintiff's economic relationship with Forward when defendant and Forward entered into the Biogen-Forward Agreement. A claim for intentional interference with a prospective economic advantage requires the plaintiff allege:

> "(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party."

<u>Edwards v. Arthur Andersen LLP</u>, 44 Cal. 4th 937, 944 (2008).

As in plaintiff's claim for intentional interference with a contract, plaintiff fails to allege independently wrongful conduct, a necessary requirement to sustain its claim for interference with prospective economic advantage. Accordingly, the court will dismiss plaintiff's third and fourth causes of action for intentional and negligent interference with a prospective economic advantage.

    D.   <u>UCL</u>

Plaintiff's sixth cause of action is for violation of the UCL, Cal. Bus. & Prof. Code § 17200, <u>et seq.</u> The UCL

prohibits unfair competition, which is defined to include "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability . . . ." Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009) (citing S. Bay Chevrolet v. Gen Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (4th Dist. 1999)).

Because the court would dismiss all of plaintiff's other claims, the unlawful prong of the UCL is not met. See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers, No. CV 12-8676 PA (PLAx), 2013 WL 2151478, at *9 (C.D. Cal. Mar. 4, 2013); Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) ("[T]he UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL."). In the antitrust context, the unfairness prong requires conduct "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). Unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Id. at 186-87.

Here, plaintiff fails to identify and sufficiently allege conduct tethered to actual or threatened impact on competition--Ixchel's allegations are limited to speculative harms to competition, as discussed above. Accordingly, the court must dismiss plaintiff's sixth cause of action for violation of

the UCL.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Docket No. 20) be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date this Order is signed to file a Second Amended Complaint, if it can do so consistent with this Order.

Dated: September 12, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE