UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| IXCHEL PHARMA, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>BIOGEN INC.,<br><br>        Defendant. | CIV. NO.: 2:17-00715 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE: MOTION</u><br><u>TO DISMISS SECOND AMENDED</u><br><u>COMPLAINT</u> |

----oo0oo----

Plaintiff Ixchel Pharma, LLC ("Ixchel") brought this action against defendant Biogen Inc. ("Biogen") asserting federal and state antitrust and state tort claims arising from an agreement that plaintiff entered into with non-party Forward Pharma FA ApS ("Forward") regarding the development of a pharmaceutical drug and a settlement agreement defendant entered into with Forward. Before the court is defendant's Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of

1

Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 37.)

I. <u>Procedural History</u>

Plaintiff initiated this action alleging: (1) violation of the Sherman Act, 15 U.S.C. § 1; (2) tortious interference with contract; (3) intentional and negligent interference with prospective economic advantage; (4) violation of the California Cartwright Act, Cal. Bus. & Prof. Code § 16700, <u>et seq.</u>; and (5) violation of California's Unfair Competition Law ("UCL"). Plaintiff filed a First Amended Complaint ("FAC") on June 14, 2017 (Docket No. 17), which the court dismissed on September 14, 2017 for four reasons: (1) plaintiff did not appear to have Article III standing because it had not allegedly suffered an actual or imminent injury in fact; (2) plaintiff was not a current or potential competitor in the alleged market and therefore did not allege antitrust injury; (3) plaintiff's tortious interference claim failed to allege "wrongful means"; and (4) plaintiff could not satisfy either the UCL's "unlawful" or "unfairness" prongs because plaintiff's other claims had been dismissed and plaintiff's allegations of harm were speculative. (Sept. 12 Order Re: Mot. to Dismiss (Docket No. 25).)

On October 2, 2017, plaintiff filed a Second Amended Complaint ("SAC") asserting all of the same claims the court previously dismissed. (Docket No. 34.) In the Second Amended Complaint, plaintiff's Sherman and Cartwright Act claims remain unchanged from the First Amended Complaint. Plaintiff has amended its other claims and added (1) an allegation that defendant included an illegal "non-compete" provision in its agreement with Forward; (2) an allegation that Forward did not

2

wait the necessary amount of time before it stopped working for plaintiff; and (3) additional facts related to speculative harms plaintiff allegedly suffered.

II. Discussion

   A. Sherman Act and Cartwright Act

To bring a Sherman Act or Cartwright Act claim, a plaintiff must establish antitrust standing.[1] See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983); Dang v. S.F. Forty Niners, 964 F. Supp. 2d 1097, 1110 (N.D. Cal. 2013). For a plaintiff to have antitrust standing, it must have an antitrust injury. See Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 110 n.5 (1986); see also Am. Ad Mgmt., 190 F.3d at 1055. Antitrust injury requires that a plaintiff be "a participant in the same market as the alleged malefactors." Bhan v. NME Hospitals, Inc., 772 F.2d 1467, 1470 n.3 (9th Cir. 1985).

The court previously dismissed plaintiff's Sherman and Cartwright Act claims because it held that plaintiff had not alleged an antitrust injury. (Docket No. 25 at 7.) Plaintiff

---

[1] Antitrust standing is distinct from Article III standing. As the court noted when it dismissed plaintiff's First Amended Complaint, plaintiff also does not appear to have Article III standing because it has not allegedly suffered an actual or imminent injury in fact, and this alone would be enough to dismiss the Second Amended Complaint. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (injury in fact must be "actual or imminent, not conjectural or hypothetical"); cf. Brotech Corp. v. White Eagle Int'l Techs. Grp., Inc., No. Civ.A.03-232, 2004 WL 1427136, at *6 (E.D. Pa. June 21, 2004) (antitrust injury was too speculative where there were insufficient allegations regarding how far plaintiff had gone in seeking "FDA approval, when such approval may be anticipated, or whether it will be prepared to enter the product to market" upon FDA approval).

3

concedes its allegations as to these claims are identical to those in the First Amended Complaint. (Pl.'s Opp'n at 1 (Docket No. 40).) The court therefore dismisses them for the reasons discussed in the court's September 12 Order. (Docket No. 25 at 4-7.)

   B.   Tortious Interference with Contract

Although plaintiff's Second Amended Complaint pleads additional facts related to defendant's alleged tortious interference with contract, this claim continues to suffer from the same shortfalls this court identified in its September 12, 2017 Order granting defendant's Motion to dismiss the First Amended Complaint.

A claim for tortious interference with a contract requires the plaintiff allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship and (5) resulting damage." Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26, 55 (1998). While tortious interference with a contract does not generally require independent wrongfulness, see id., interference with an at-will contract requires a pleading of wrongful means. Reeves v. Hanlon, 33 Cal. 4th 1140, 1152 (2004). The court previously held that the Forward-Ixchel Agreement was an at-will contract because Forward could terminate it at any time, and thus in order to plead tortious interference plaintiff must also allege "that the defendant engaged in an independently

4

wrongful act." (Id.; see also Docket No. 25 at 8-10.)[2]

In the Second Amended Complaint, plaintiff identifies two allegedly "wrongful means": (1) Forward's cessation of clinical trial work following termination of its agreement with plaintiff (SAC ¶ 64) and (2) Forward's failure to wait the required 60 days before ceasing its work with plaintiff after serving its notice of termination (SAC ¶ 62).

With regard to the first claim, plaintiff alleges that Forward breached an obligation to conduct clinical trials after its Collaboration Agreement with plaintiff had terminated. (FAC 34; SAC 64.) However, the court previously noted that such an obligation to continue with trials post-termination did not exist. (Docket No. 25 at 10.) Thus, defendant cannot be liable for inducing Forward to breach this nonexistent duty.

As to plaintiff's new claim that Forward failed to honor the full 60-day notice period, plaintiff does not allege that defendant instructed Forward not to wait the requisite time period. In fact, plaintiff merely indicates that defendant instructed Forward to terminate its existing contract with plaintiff, but has not alleged that defendant instructed Forward to in any way breach the existing contract or terminate it in such a way that would constitute a violation. To state a valid claim for tortious interference with a contract, plaintiff must allege that defendant's "intentional acts [were] designed to

---

[2] Plaintiff again attempts to argue, using the same reasoning the court previously rejected, that there is no independently wrongful act requirement in this case. However, the court remains unpersuaded by plaintiff's argument and again holds that independent wrongfulness is a required element.

5

induce a breach or disruption of the contractual relationship" between Forward and plaintiff. See Quelimane Co., 19 Cal. 4th at 55. Here, plaintiff has pled that defendant induced Forward to terminate its contracts with plaintiff, but plaintiff has not identified any evidence that indicates that defendant specifically told Forward to terminate its contract with plaintiff before the requisite 60 days had elapsed, or to breach its contract in any other way. Accordingly, plaintiff has failed to aver that defendant intentionally directed this alleged breach.

Additionally, plaintiff fails to allege any harm that resulted from this alleged early termination. Plaintiff does not, and seemingly cannot, allege that had Forward waited 60 days to cease its work on the clinical trials, plaintiff would have avoided the alleged speculative harms it asserts. Accordingly, even if plaintiff had satisfied the other requirements of a claim for tortious interference with a contract, plaintiff's failure to plead "resulting damage" means that its tortious interference claim based on this supposed breach would still warrant dismissal. See Sebastian Int'l, Inc. v. Russolillo, Civ. No. 00-3476 SVW JWJX, 2015 WL 1323127, at *7 (C.D. Cal. Feb. 22, 2005)(plaintiff claiming intentional interference with contract based on induced breach must show damages "attributable to" the alleged induced breach "and not other causes unrelated to the alleged wrong").

    C. <u>Intentional and Negligent Interference with Prospective Economic Advantage</u>

As with plaintiff's claim for intentional interference with a contract, plaintiff fails to allege independently wrongful conduct, a necessary requirement to sustain its claims for intentional and negligent interference with prospective economic advantage. (Docket No. 25 at 11.) Accordingly, the court must dismiss plaintiff's third and fourth causes of action.

### D. UCL

California's Unfair Competition Law prohibits unfair competition, which is defined to include "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

#### 1. Unlawfulness

Because the court would dismiss all of plaintiff's other claims, as discussed above, the unlawful prong of the Unfair Competition Law is not met. See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers, Civ. No. 12-8676 PA (PLAx), 2013 WL 2151478, at *9 (C.D. Cal. Mar. 4, 2013); Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) ("[T]he UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.").

In an attempt to otherwise satisfy the unlawfulness requirement, plaintiff argues that defendant's inclusion of § 2.13 in the Forward-Biogen Agreement is an allegedly illegal "non-compete" provision that violates California Business & Professions Code § 16600 and New York common law. (SAC ¶¶ 56, 59, 113.) However, the court does not find that § 2.13 is in fact a non-compete agreement. The Forward-Biogen Agreement expressly preserves Forward's ability to compete against Biogen under the

terms of a co-exclusive license. In fact, the Agreement explicitly permits Forward to "authoriz[e] contractors to perform services for [Forward], including services to manufacture or import products and to perform wholesale and distribution services for [Forward]." Forward-Biogen Agreement § 3.01. Therefore, § 2.13 clearly does not prevent Forward from developing and selling any pharmaceutical products containing DMF, as plaintiff asserts, and thus does not prevent Forward from competing with Biogen. Accordingly, this section cannot be classified as a "non-compete covenant," which Black's Law Dictionary defines as a commitment "not to engage in the same type of business." Black's Law Dictionary 420 (9th ed. 2009).

Rather than defining § 2.13 as some sort of illegal non-compete agreement, the court views it instead as an ancillary restraint, one that is subordinate to the larger, lawful agreement between Forward and defendant. Section 2.13 is merely a restriction that prevents Forward from competing with defendant in very limited and defined circumstances, and as such is not subject to the principles that govern non-competes as a matter of law. See Educ. Impact, Inc. v. Danielson, Civ. No. 14-937 FLW, LGHG, 2015 WL 381332, at *8 (D.N.J. Jan. 28, 2014)(principles that govern "non-compete clause" were "not applicable" when license "restricted [licensor] from competing with [licensee] in only defined circumstances").

The Supreme Court has explained that the Rule of Reason "has been regarded as a standard for testing the enforceability of covenants in restraint of trade which are ancillary to a legitimate transaction." Nat'l Soc. of Prof'l Engineers v.

8

United States, 435 U.S. 679, 689 (1978). Whether or not § 2.13 is a non-compete clause, because it falls outside of the employment context, the court would analyze its legality under the antitrust law's Rule of Reason and not the narrower rule of per se illegality § 16600 applies to non-compete agreements in employment contracts. See, e.g., Martikian v. Hong, 164 Cal. App. 3d 1130, 1133 (2nd Dist. 1985); Ikon Office Solutions, Inc. v. Rezente, Civ. No. 2:10-1704 WBS KJM, 2010 WL 5129293, at *4 n.5 (E.D. Cal. Dec. 9, 2010) (explaining that Section 16600 "bars restrictive covenants in employment contracts"); Dayton Time Lock Service, Inc. v. Silent Watchman Corp., 52 Cal. App. 3d 1, 6 (1975)(applying the Rule of Reason to a Section 16600 challenge to an exclusive dealing arrangement).

Although plaintiff argues that Section 16600, and not the Rule of Reason, should be applied in this case, California courts have concluded that Section 16600 does not apply outside of the employment context. The case law plaintiff relies on, notably Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937 (2008), indicates that Section 16600, rather than the Rule of Reason, applies when assessing "employee noncompetition agreements," but plaintiff has identified no case law expanding the Edwards decision to situations outside of the narrow employee context. When restraints, whether ancillary restraints as is the case here, or non-compete clauses, do not involve an employment agreement, a court must apply the antitrust law's Rule of Reason. See, e.g., Martikian v. Hong, 164 Cal. App. 3d 1130, 1133 (2d Dist. 1985) (upholding restrictive covenant in commercial lease under antitrust principles and explaining that "from earliest

times there has been developed a 'rule of reason' whereby any given restraint is to be tested as lawful or unlawful" (citing <u>Standard Oil Co. v. United States</u>, 221 U.S. 1 (1911)). Accordingly, the court finds that the legality of § 2.13 must be analyzed according to the Rule of Reason. See <u>USS-POSCO Indus. v. Case</u>, 244 Cal. App. 4th 197, 209 (1st Dist. 2016)(holding <u>Edwards</u> inapplicable unless the provision at issue is a "quintessential noncompete agreement that expressly restrain[s] an employee").

The Rule of Reason states that "the antitrust laws prohibit only those contracts which unreasonably restrain competition." <u>Centeno v. Roseville Community Hosp.</u>, 107 Cal. App. 3d 62, 72 (3rd Dist. 1979). "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." <u>Continental T.V., Inc. v. GTE Sylvania Inc.</u>, 433 U.S. 36, 49 n. 15 (citing <u>Board of Trade of City of Chicago v. U.S.</u>, 246 U.S. 231, 238 (1918). Because all inquiry conducted under the Rule of Reason "is confined to a consideration of impact on competitive conditions," <u>Nat'l Soc. of Prof'l Engineers</u>, 435 U.S. at 690, it requires that plaintiff file well-pleaded allegations of harm to competition. See <u>Tanaka v. University of Southern California</u>, 252 F.3d 1059, 1063 (9th Cir. 2001).

The court previously rejected plaintiff's First Amended Complaint, holding that the "allegations are limited to speculative harms to competition." (Docket No. 25 at 12.) The court finds that the Second Amended Complaint adds nothing new,

and thus again must dismiss this cause of action for failure to plead harm to competition. Plaintiff re-invokes its allegation that, due to defendant's actions, it lost a $150,000 grant, (Pl.'s Opp'n at 49), but this allegation does not establish injury in fact as a lost grant does not constitute a harm to competition. Further, although plaintiff claims that the Second Amended Complaint added allegations that § 2.13 completely blocks Forward from competing with defendant, (id. at 17-18), as described above, the Forward-Biogen Agreement explicitly granted Forward the right to compete in particular situations. Accordingly, the court holds that plaintiff's purported harms remain entirely speculative and do not sufficiently allege harm to competition.[3]

### 2. Unfairness

In the antitrust context, the unfairness prong of the Unfair Competition Law requires conduct "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). Unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Id. at 186-87.

---

[3] In its Opposition to the Motion to Dismiss, plaintiff makes a weak argument that § 2.13 also violates New York Law. (Id. at 28-19.) However, plaintiff previously disavowed reliance on New York law in its Complaint (SAC ¶ 60) and thus cannot now attempt to rely on it.

1 | Here, plaintiff fails to identify and sufficiently allege conduct tethered to an actual or threatened impact on competition. As with the First Amended Complaint, plaintiff's allegations are limited to speculative harms to competition, as discussed above. (See Docket No. 25 at 12.) Accordingly, the court must dismiss plaintiff's sixth cause of action for violation of California's Unfair Competition Law.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss (Docket No. 37) be, and the same hereby is, GRANTED. The Second Amended Complaint is hereby DISMISSED. Plaintiff has already amended its complaint two times, and the court finds that further amendment as to plaintiff's first, second, third, and fourth claims would be futile. However, because plaintiff presented a new argument related to defendant's alleged violation of the California Unfair Competition Law, the court will grant plaintiff one more opportunity to amend its complaint with regard to this claim. Plaintiff has twenty days from the date this Order is signed to file a Third Amended Complaint, if it can do so consistent with this order.

Dated: January 25, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE